IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Austin Carrigg,<br>On behalf of M.C.<br>5415 Connecticut Ave. NW #630<br>Washington D.C. 20032<br><br>      Plaintiff,<br><br>      v.<br><br>Gallaudet University,<br>800 Florida Ave. NE<br>Washington D.C. 20002<br><br>      Defendant<br><br>to serve:<br><br>ROBERTA J. CORDANO<br>President<br>Gallaudet University<br>800 Florida Ave.<br>College Hall 208<br>Washington, D.C. 20002 | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:   Civ. A. No:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**COMPLAINT**

COMES NOW Plaintiff, Ms. Austin Carrigg ("Ms. Carrigg") by and through the undersigned counsel, to respectfully request this Court find that Gallaudet University ("Gallaudet") discriminated against M.C. on the basis of her disability, award equitable relief, compensatory damages, punitive damages, and reasonable attorneys' fees and costs. Ms. Carrigg pleads as follows:

**PRELIMINARY STATEMENT**

1. This is an action under section 504 of the 1973 Rehabilitation Act, 29 U.S.C. § 700 *et seq.* and D.C. Human Rights Act ("DCHRA") D.C. Code 2-1402.41 for Gallaudet's

1

discrimination against M.C. on the basis of her disability—that she is "Deaf plus" which means she is a student with disabilities in addition to Deafness.

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to section 504 of the Rehabilitation Act ("§504"), 29 U.S.C. §§ 701-94 and relief is authorized by 29 U.S.C § 794(a).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

4. This Court has supplemental jurisdiction over the D.C. Human Rights Act claim ("DCHRA") as the DCHRA claim arises out of the same nucleus of operative fact. D.C. Code § 201402.41; 28 U.S.C. § 1367.

## PARTIES

5. Plaintiff, Ms. Austin Carrigg is a resident of the District of Columbia ("the District") and is the educational decision-maker for her six-year-old daughter, M.C.

6. Ms. Carrigg resides in the District of Columbia.

7. Defendant, Gallaudet University is federally chartered private university in the District of Columbia. Pursuant to 20 U.S.C. § 4304 "The Board of Trustees of Gallaudet University is authorized . . . to maintain and operate the Laurent Clerc National Deaf Education Center to carry out exemplary elementary and secondary education programs . . . ." 20 U.S.C. § 4303(1)(A). The Kendall Demonstration Elementary School is under the direction of the Laurent Clerc National Deaf Education Center at Gallaudet University. 20 U.S.C. § 4303(C)(i). For the purposes of this Complaint, the terms Gallaudet University and Kendall Demonstration Elementary School ("KDES") are coterminous.

## FACTUAL BACKGROUND

*Introduction*

8. Ms. Carrigg's daughter, M.C., is six years old and has been enrolled at KDES in the

      District of Columbia since the 2015-16 school year.

9. KDES is a day school educating Deaf and hard of hearing students from birth through eighth grade.

10. M.C. lives with multiple disabilities including and that she is profoundly Deaf and Trisomy 21 ("Down Syndrome").

11. M.C. also has several other conditions such as Glycogen Storage Disease, Sleep Apnea, Hypothyroidism, Osteoporosis, Dysphagia, Esophageal Reflux, and several allergies.

12. M.C.'s native language is American Sign Language ("ASL").

13. M.C. cannot communicate in spoken language.

14. In the "Deaf community" persons like M.C. with additional disabilities are referred to as "Deaf plus"

15. As a result of these conditions, as here relevant, M.C. requires the support of a nurse at all times during the school day.

16. For the 2016-17 school year at KDES, M.C. was attended by a nurse fluent in American Sign Language ("ASL").

17. Gallaudet failed to provide M.C. a nurse for the first semester of the 2017-18 school year, so M.C. did not attend school at KDES.

18. KDES provided M.C. with a nurse for the second semester of the 2017-18 school year for only two days per week, so M.C. was not able to attend school for the other three days of the school week.

19. During the second semester of the 2017-18 school year, Ms. Carrigg learned M.C.'s nurse would not return for the 2018-19 school year at KDES.

20. In or about March 2018, Ms. Carrigg requested Gallaudet provide a nurse for M.C. for

     the upcoming 2018-19 school year.

21. The 2018-19 school year started at KDES on or about August 20, 2018.

22. Gallaudet failed to find any nurse for M.C. and, thereby, excluded her from attending school at KDES.

23. Ms. Carrigg secured a nurse through her insurer Health Services for Children with Special Needs ("HSCSN") in or about February 2019.

24. M.C. returned to school at KDES about late April 2019.

25. As a result, Gallaudet excluded M.C. from attending school at KDES from on or about August 20, 2019 until about late April 2019.

26. However, the nurse that Ms. Carrigg secured cannot communicate in ASL.

27. After securing the nurse, Ms. Carrigg requested an ASL/English interpreter so that M.C. could communicate with the nurse and the nurse could communicate with KDES staff.

28. Gallaudet rejected Ms. Carrigg's request for an ASL to English interpreter for M.C. and failed to provide a qualified interpreter.

29. Given the specificity and complexity involved in describing medical issues and emergencies, M.C. requires an interpreter to effectively communicate with her nurse.

30. As of the filing of this complaint, KDES has failed to provide M.C. with an ASL interpreter for her nurse since her return to KDES about late April 2019.

*Transportation*

31. Gallaudet provides door-to-door transportation to all students within a fifteen (15) mile radius of the U.S. Capitol Building.

32. Ms. Carrigg resides within fifteen (15) miles of the U.S. Capitol Building.

33. Ms. Carrigg has requested transportation services for M.C. many times since the start of

4

the 2017-18 school year.

34. Before the 2017-18 school year, Ms. Carrigg requested transportation services for M.C.

35. Gallaudet rejected that request for transportation services.

36. In or about March 2018, Ms. Carrigg and M.C. moved from Joint Base Anacostia-Bolling to North West D.C.

37. In or about March 2018, Ms. Carrigg informed Gallaudet of their move and requested transportation services for M.C.

38. Gallaudet rejected Ms. Carrigg's request for transportation services pushing the discussion of transportation off to a later indeterminate date.

39. Ms. Carrigg requested transportation again for M.C. before the start of the 2018-19 school year.

40. Gallaudet ignored and in effect rejected Ms. Carrigg's request for transportation services.

41. At M.C.'s latest IEP meeting on or about May 9, 2019, Ms. Carrigg renewed her request for transportation to and from Gallaudet for M.C.

42. Gallaudet again ignored and in effect rejected Ms. Carrigg's request pushing any discussion of transportation off until after the commencement of the 2019-20 school year.

43. At all times relevant to this complaint, Gallaudet has refused to or been deliberately indifferent to M.C.'s need for transportation.

*KDES's After School Program*

44. Gallaudet provides an After School Program ("ASP") held after school Monday-Thursday to promote recreational and educational learning among students.

45. Current students at KDES from the age of four to fifteen years old are eligible to join the

program

46. Ms. Carrigg requested M.C. be allowed to attend the ASP during the 2017-18, 2018-19 and 2019-20 school years at inter alia IEP meetings and in M.C.'s enrollment documentation.

47. KDES rejected Ms. Carrigg's requests to allow M.C. to participate in the ASP during the 2017-18 and 2018-19 school years, and KDES has not indicated it will allow M.C. to attend the ASP for the upcoming 2019-20 school year.

## COUNT I

**Under § 504 and the DCHRA, Gallaudet discriminated against M.C. on the basis that she is "Deaf-plus" by failing to accommodate M.C. with a nurse and interpreter and excluding M.C. from transportation services and after school programming.**

48. Plaintiff reincorporates paragraphs 1-44 and reasserts them as part of Count I.

49. Under section 504 of the Rehabilitation Act, private schools that accept federal funding may not discriminate against persons with disabilities.  29 U.S.C. § 794.

50. Gallaudet is a school that accepts federal funds under the Education of the Deaf Act to run KDES.  20 U.S.C. § 4304-05.

51. The DCHRA prohibits educational institutions from denying access to its facilities, services, and programs to any qualified individual based upon the disability of the individual.  D.C. Code § 2-1402.41

52. The DCHR defines an "educational institution" as "any public or *private* institution including an academy, college, elementary or secondary school . . . ." D.C. Code § 2-1401.02(8).

53. Disability based discrimination claims under § 504 and DCHRA "are similar in substance and consequently cases interpreting [all] are applicable and interchangeable . . . ."

6

*American Council of the Blind v. Paulson*, 525 F.3d 1256, 1260 n.2 (D.C. Cir. 2008);

54. To establish disability-based discrimination under § 504 and DCHRA, plaintiffs must show that (1) they are qualified individuals with a disability (2) that they are being discriminated against by the entity; and (3) that such discrimination is by reason of their disability. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999); *A.M. v. Bridges Public Charter School*, 2019 WL 1932579 at *2 (D.D.C. May 01, 2019).[1]

55. Plaintiffs may show discrimination under § 504 and the DCHRA through a failure to accommodate or disparate treatment theory among other theories.

56. To prevail on a failure to accommodate claim, Ms. Carrigg must show (1) that M.C. was disabled for purposes of the act, (2) that Gallaudet had notice of M.C.'s disability, and (3) Gallaudet denied Ms. Carrigg's request for a reasonable accommodation. *Chenari v. George Washington Univ.*, 847 F.3d 740, 746-47 (D.C. Cir. 2017); *Pierce v. District of Columbia*, 128 F. Supp. 3d 250 (D.D.C. 2015); *Seth v. District of Columbia*, 2018 WL 4682023 at *13 (D.D.C. 2018).

57. To establish disparate treatment, Ms. Carrigg must show M.C.'s disability caused the discrimination. *A.M. v. Bridges Public Charter School*, 2019 WL 1932579 at *3 (D.D.C. May 01, 2019).

58. M.C. requires a nurse to have access to KDES at Gallaudet.

59. Gallaudet failed to provide M.C. with a nurse for nearly the entire first semester of the 2017-18 school year.

60. As a result, Gallaudet excluded M.C. from attending school for nearly the entire Fall

---

[1] Unlike the DCHRA, §504 requires a showing that such discrimination is solely by reason of their disability. *Alston v. District of Columbia*, 561 F. Supp. 2d 29, 39 (D.D.C. 2008). Gallaudet discriminated against M.C. solely by reason of her disability as Gallaudet was deliberately indifferent to M.C.'s need for a nurse, interpreter, and transportation as a result of her disabilities in addition to her Deafness.

2017 semester.

61. Gallaudet also failed to provide M.C. with a nurse for three out of five school days during the Spring 2018 semester.

62. As a result, Gallaudet excluded M.C. from attending school for about sixty (60) percent of the Spring 2018 semester.

63. Gallaudet failed to provide M.C. with a nurse from the start of the 2018-19 school year on or about August 20, 2018 until about late April 2019.

64. As a result, Gallaudet excluded M.C. from access to school at KDES from on or about August 20, 2018 until about late April 2019.

65. Gallaudet was deliberately indifferent to M.C.'s "plus" disabilities that require her to receive a nurse at all times during the school day during both the 2017-18 and 2018-19 school years.

66. Gallaudet's failure to accommodate M.C. with a nurse during the 2017-18 school years excluded her from attending school at KDES in violation of § 504 and the DCHRA.

67. Gallaudet also failed to accommodate Ms. Carrigg's request for an English/ASL interpreter for M.C. from about late April 2019 until the end of the 2018-19 school year.

68. M.C.'s nurse since late April 2019 at KDES cannot communicate in ASL.

69. M.C. requires an interpreter for her nurse to be able to effectively communicate with M.C., monitor M.C.'s medical conditions, and treat M.C. in the case of an emergency.

70. M.C.'s nurse requires an interpreter to be able to effectively communicate with KDES staff.

71. Gallaudet denied Ms. Carrigg's request for an English/ASL interpreter and did not provide a qualified interpreter to M.C. or her nurse.

72. Gallaudet was deliberately indifferent to M.C.'s "plus" disabilities that require her to have a nurse who can effectively communicate with M.C. in her native language ASL.

73. By failing to provide an ASL interpreter, Gallaudet has prevented M.C. from having a nurse at school who can effectively monitor and treat M.C.'s medical conditions.

74. Gallaudet also failed to provide M.C. with transportation services.

75. Gallaudet provides door-to-door transportation to all students within a fifteen (15) mile radius of the U.S. Capitol Building.

76. Ms. Carrigg resides within fifteen (15) miles of the U.S. Capitol Building.

77. Ms. Carrigg requested transportation before the start of the 2017-18 school year.

78. Gallaudet rejected that request for transportation services.

79. Ms. Carrigg renewed her request for transportation services for M.C. when she moved from Joint Base Anacostia-Bolling about March 2018 to North West D.C.

80. On or about March 2018, Ms. Carrigg offered to provide a special seat for M.C. to use on the transportation vehicle.

81. Gallaudet denied Ms. Carrigg's request for transportation services in about March 2018.

82. Ms. Carrigg requested transportation services for M.C. in the enrollment paperwork she submitted to Gallaudet before the start of the 2018-19 school year.

83. Gallaudet ignored and in effect rejected that request for transportation services.

84. On or about May 9, 2019 Ms. Carrigg renewed her request for transportation at M.C.'s IEP meeting.

85. Gallaudet again ignored and in effect rejected Ms. Carrigg's request for transportation pushing any discussion of transportation off until after the commencement of the 2019-20 school year.

86. Ms. Carrigg filled out the enrollment packet for M.C. at Gallaudet for the upcoming 2019-20 school year and requested transportation for M.C.

87. As of the filing of this complaint, Gallaudet has not set up nor indicated it will set up transportation for M.C. to and from KDES for the 2019-20 school year.

88. Gallaudet has failed to provide transportation with deliberate indifference to M.C.'s disabilities while providing transportation to other students at KDES who are not "Deaf plus" in violation of § 504 and the DCHRA.

89. Gallaudet also failed to provide M.C. with access to its ASP.

90. Gallaudet provides ASP to current students Monday to Thursday to promote recreational and educational learning among students.

91. Current students at KDES from ages four to fifteen are eligible to join the program.

92. Ms. Carrigg requested M.C. be allowed to attend the ASP for the 2017-18, 2018-19, and 2019-20 school years at *inter alia* IEP meetings and in M.C.'s enrollment documentation.

93. KDES rejected Ms. Carrigg's requests to allow M.C. to participate in the ASP during the 2017-18 school years, and KDES has not indicated it will allow M.C. to attend the ASP for this upcoming 2019-20 school year.

94. Gallaudet has excluded M.C. from attending its ASP with deliberate indifference to M.C.'s disabilities while allowing non "Deaf plus" students to attend the ASP in violation of § 504 and the DCHRA.

**RELIEF**

Based on the foregoing, Ms. Carrigg respectfully requests the following relief:

1. DECLARE that the actions of Defendant, as alleged herein, violated Ms. Carrigg's rights under the §504 of the Rehabilitation Act and the DCHRA;

2. ENTER JUDGMENT awarding Ms. Carrigg equitable relief;

3. ENTER JUDGMENT awarding Ms. Carrigg compensatory damages against Gallaudet in an amount appropriate to the evidence adduced in this case;

4. ENTER JUDGMENT awarding punitive damages against Gallaudet in an amount appropriate to the evidence adduced in this case;

5. ENTER JUDGMENT awarding Ms. Carrigg her costs and reasonable attorneys' fees in this action; and

6. GRANT Ms. Carrigg such other and further relief as this Court may deem just and proper.

Respectfully Submitted,

_____/s/ (electronically signed\_\_\_\_\_
Charles Moran [970871]
Charles Sibert [1510808]
1100 H Street N.W. Ste 260
Washington, D.C. 20005
(p) (202) 450-2864
(p) (202) 450-2776
(f) (202 478-0781
charles.moran@camoranlaw.com
charles.sibert@camoranlaw.com

*Attorneys for Plaintiff*

August 15, 2019

11